Submitted June 7, 2013, affirmed April 20, petition for review denied October 6, 2016 (360 Or 423)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## WILLIAM MEGGINSON SMITH,
*Defendant-Appellant.*

Polk County Circuit Court
08P3396; A149009

372 P3d 549

Peter Gartlan, Chief Defender, and Mary M. Reese, Senior Deputy Public Defender, Office of Public Defense Services, filed the opening brief for appellant. William M. Smith filed the supplemental and reply briefs *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and DeVore, Judge, and Haselton, Senior Judge.

HASELTON, S. J.

## HASELTON, S. J.

Defendant appeals from a judgment, after a trial to the court, convicting him of felony public indecency, ORS 163.465(2)(b), and imposing a sentence of life imprisonment without possibility of release or parole pursuant to ORS 137.719(1). In his principal brief, as well as a supplemental brief, defendant raises a variety of assignments of error. We write to address only defendant's contentions that (1) the trial court committed an error of law apparent on the record, ORAP 5.45(1), in entering a conviction for felony public indecency, because his prior convictions were legally insufficient to elevate his offense in this instance from a misdemeanor to a felony, *see* ORS 163.465(2)(b); and (2) in the circumstances here, the imposition of a "true life" sentence was unconstitutional, including as impermissibly disproportionate in violation of Article I, section 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution. For the reasons that follow, and with particular reference to *State v. Sokell*, 273 Or App 654, 362 P3d 251, *rev allowed*, 358 Or 449 (2015), and *State v. Davidson*, 271 Or App 719, 353 P3d 2, *rev allowed*, 358 Or 449 (2015), we reject those challenges. Accordingly, we affirm.[1]

Because defendant was convicted, we summarize the largely undisputed facts in the light most favorable to the state. *State v. Gibson*, 338 Or 560, 562, 113 P3d 423, *cert den*, 546 US 1044 (2005). The 16-year-old victim was sitting on a bench in a public park when she saw defendant standing behind a bush and staring at her, engaged in movements that suggested that he was masturbating. The victim stood up and began to walk away and noticed that defendant was walking behind her. Out of the corner of her eye, the victim noticed that defendant's underwear and pants were down around his ankles and that he was holding his penis. The victim called 9-1-1, and defendant was subsequently arrested.

At the time of defendant's conduct in this case, he had prior Oregon convictions for attempted first-degree sexual abuse (in Multnomah County in 2005) and attempted first-degree rape (in Yamhill County in 1986). Defendant

---

[1] We reject defendant's other assignments of error without published discussion.

also had pleaded guilty in Nevada (in 1979) to "sexual assault."

Given those circumstances, defendant was charged by indictment with felony public indecency. Although public indecency, including as charged here in violation of ORS 163.465(1)(c),[2] is generally a Class A misdemeanor, ORS 163.465(2)(a), the offense is elevated to a Class C felony

"if the person has a prior conviction for public indecency or a crime described in ORS 163.355 to 163.445 or for a crime in another jurisdiction that, if committed in this state, would constitute public indecency or a crime described in ORS 163.355 to 163.445."

ORS 163.465(2)(b).[3] Thus, if either of defendant's Oregon convictions was "* * * a crime described in ORS 163.355 to 163.445," or if proof of the Nevada matter established a conviction for such a crime, defendant's conduct, as charged, would constitute felony, not misdemeanor, public indecency. ORS 163.465(2)(b).

The case was tried to the court. In addition to evidence of defendant's conduct, the state offered evidence pertaining to the additional felony-enhancement element. With respect to the latter, the state submitted as exhibits: (1) copies of the 2005 and 1986 judgments of conviction for attempted first-degree sexual assault and attempted first-degree rape (as well as the predicate charging instruments), and (2) a transcript of a change of plea hearing in the 1979 Nevada matter, in which defendant pleaded guilty to a charge of "sexual assault."[4]

The court, rendering a "speaking verdict," found defendant guilty of public indecency. Further—although

---

[2] Under ORS 163.465(1), a person commits the offense of public indecency if,

"while in, or in view of, a public place the person performs:

"* * * * *

"(c) An act of exposing the genitals of the person with the intent of arousing the sexual desire of the person or another person."

[3] The operative text of ORS 163.465(2)(b) was enacted in 1999. Or Laws 1999, ch 962, § 1.

[4] That transcript constituted the state's sole proof with respect to the Nevada matter. The state did not offer proof of the subsequent entry of a judgment of conviction or imposition of sentence based on that plea.

defendant had not contested the sufficiency of the state's proof as to the felony-enhancment element—the court addressed that matter, determining that, while the state's proof with respect to the Nevada guilty plea was deficient, either of defendant's two prior Oregon convictions supported that enhancement.[5]

With respect to sentencing and, specifically, the imposition of the sentence of life imprisonment without possibility of release or parole pursuant to ORS 137.719(1),[6] defendant argued that, in the totality of his circumstances, such a sentence would violate the anti-disproportionality protections of Article I, section 16 and the Eighth Amendment, as well as the Equal Protection Clause of the Fourteenth Amendment. In rejecting those challenges, the trial court observed:

> "I'm in my 35th year of law practice. I spent seven or eight years in private practice primarily doing criminal defense, including many sex offenders, one Aggravated Murder. I spent 14 years as a prosecutor, including 12 years as the District Attorney during which time I prosecuted not quite three dozen cases of Murder and Aggravated Murder. And now I've been a judge for a little over 12 years.

[5] Specifically, the trial court reasoned:

"I do note that the [Nevada] indictment charges Sexual Assault with a Deadly Weapon. * * * This is the matter from Washoe County, Nevada. I just had a chance to skim here while the trial was going on. But, unless somebody can point to something, I don't see that this proves anything whatsoever. It says that he plead[ed] guilty to Sexual Assault, it doesn't say anything about a weapon. It doesn't tell me if this is a misdemeanor or a felony and it doesn't include the fact if he was ever sentenced.

"I don't know about Nevada law, but in Oregon law there's no conviction until there's a sentence. This just says that in 1979 he plead[ed] guilty to a crime called Sexual Assault. The Oregon statute says it has to be one of the crimes enumerated in the statute or the equivalent of it under out-of-state law. So, even if that was a felony and—felony and he was sentenced, there's no evidence before me that that felony was for anything equivalent to one of the prohibited felonies in—in Oregon. * * *

"The other two matters, however, are Oregon offenses, one from Multnomah County, one from Yamhill County, they include the indictment and the judgment clearly showing convictions for the enumerated charges.

"So, I do find that the defendant has been convicted of the prior sex offenses as alleged in the indictment, at least the last two of which, and that is sufficient to elevate this matter from a misdemeanor to a felony."

[6] The text of that statute is set out below. 277 Or App at 721.

"In that time, I've come across dangerous, antisocial individuals far beyond what I would have considered even feasible when I began this trek. You, sir, are what I take to be one of the four most dangerous antisocial individuals that I have ever encountered.

"* * * * *

"Then we look at the facts, not only of this case, but of your life. When I or any judge sentences somebody what we should be looking at is the facts not only of the case, but of your past and how our sentence is going to impact you and society.

"Certainly, and you agree with me, you have a terrible criminal record. What has become apparent in the course of this proceeding is that your criminal record represents but a fraction of your criminal abusive conduct.

"* * * * *

"The presumptive sentence in this case is life in prison without the possibility of parole. That is barely enough time to cover the conduct and the dangerous person you are in this society."[7]

On appeal, as noted, defendant challenges, *inter alia*, (1) the imposition of a felony conviction, pursuant to ORS 163.465(2)(b), and (2) the imposition of sentence pursuant to ORS 137.719(1). We address each in turn.

## ANALYSIS

A. *Sufficiency of Prior Convictions to Support Felony Enhancement*

On appeal, defendant argues, for the first time, that the trial court erred in failing to grant *sua sponte* a judgment

---

[7] Defendant had asked the court to depart downward to a lesser sentence pursuant to ORS 137.719(2), which authorizes the court to impose a downward departure from the presumptive sentence of life imprisonment without the possibility of release or parole "based upon findings of substantial and compelling reasons." The trial court rejected that request, stating that there were no mitigating factors, but many aggravating factors, including evidence of "literally hundreds of other incidences of a sexual display, sexual conduct in prison and out of prison. None of which have been charged at least criminally, but the evidence is clear with regard to those." The court mentioned a letter in which defendant described dozens of contacts with young girls, for which he had not been convicted.

On appeal, defendant does not contend that the sentencing court erred in denying his request for a downward departure.

of acquittal on the charge of felony public indecency (second assignment of error) and in entering a judgment of conviction on that charge (third assignment of error), because the state's proof—in particular, the evidence of his prior Oregon convictions for *attempted* sex offenses—was legally insufficient to establish the additional enhancing element of felony public indecency.

Defendant's argument, as we understand it, is simple and syllogistic: (1) Under ORS 163.465(2)(b), an element of felony public indecency is that (as pertinent here) the defendant have a prior *conviction for * * * a crime described in ORS 163.355 to 163.445.*" (Emphasis added.) (2) Here, defendant's prior Oregon convictions were for *attempted* first-degree rape and *attempted* first-degree sexual abuse. (3) Criminal attempt is a distinct crime—that is, distinct from completed offenses—"described" in ORS 161.405.[8] (4) Nothing in ORS 163.355 to ORS 163.445, including those provisions relating to first-degree rape (ORS 163.375) and first-degree sexual abuse (ORS 163.427), refers to culpability for criminal attempt. (5) Consequently, neither of defendant's prior convictions was for a "crime described in ORS 163.355 to 163.445" and, thus, cannot serve as a predicate for felony public indecency under ORS 163.465(2)(b).[9]

Defendant acknowledges that he did not raise and preserve such a challenge before the trial court, but contends that the asserted error satisfies the requisites of "plain error" review as prescribed in *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Defendant further asserts that an exercise of our discretion under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991), is imperative as consonant with "the ends of justice," *id.* at 382 n 6, given not only the consequent enhancement from a misdemeanor to a felony but, even more, the derivative imposition of the "true life" sentence.

---

[8] The pertinent text of ORS 161.405 is set out below. 277 Or App at 717.

[9] As noted, ORS 163.465(2)(b) also provides for enhancement based on a conviction in another jurisdiction for a crime that, if committed in Oregon, would constitute public indecency or a "crime described in ORS 163.355 to 163.445." Also, as noted, the trial court, in rendering its verdict, deemed the state's proof as to the Nevada matter to be deficient. Thus, defendant's plain error challenge and the state's response pertain solely to the trial court's reliance on either of the Oregon convictions.

The state counters that the asserted error is not "plain error" in that defendant's legal premise—*viz.*, that a conviction for an attempted sex offense is not a qualifying predicate for purposes of ORS 163.465(2)(b)—is, at the least, a matter "reasonably in dispute." *Brown*, 310 Or at 355. In that regard, the state asserts, *inter alia*, that

"a conviction for attempted first-degree rape is one that is based on, or 'described in,' ORS 163.375, the statute that defines the offense of first-degree rape—it is not a conviction based on, or 'described in,' ORS 161.405, the statute that defines what constitutes an 'attempt.'"

The state further posits that construing ORS 163.465(2) so as to preclude reliance on felony convictions for attempted sex crimes (*e.g.*, first-degree rape), while permitting enhancement based on certain misdemeanor convictions (*e.g.*, "sexual misconduct, ORS 163.445) would be incompatible with an apparent legislative purpose of imposing enhanced sanctions for public indecency for "serious repeat sexual offenders."[10]

For error to be considered "apparent on the record," ORAP 5.45(1), it must satisfy three criteria: (1) the asserted error must be one "of law"; (2) it must be "apparent," in that "the legal point is obvious, not reasonably in dispute"; and (3) the error must appear "on the face of the record," that is, the reviewing court "need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error [must be] irrefutable." *Brown*, 310 Or at 355. If those three conjunctive requirements are satisfied, we then proceed to consider factors pertaining to the exercise of *Ailes* discretion. Among those considerations are

"the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way * * *."

*Ailes*, 312 Or at 382 n 6.

---

[10] Respondent's brief does not address the propriety of exercising *Ailes* discretion.

Here, we begin—and, as amplified below, ultimately end—at the level of the "plain error" analysis under *Brown* and, consequently, do not reach and address *Ailes* discretion. An assessment of the availability of plain error review here begins logically with defendant's essential premise. Unless defendant's proffered construction of ORS 163.465(2)(b) is so "obvious" as not to be "reasonably in dispute," *Brown*, 310 Or at 355, that alone precludes review.

We pause, before assessing the substance of defendant's essential contention to emphasize the fundamental distinction between a "correct" statutory construction and one that is not "reasonably in dispute." Given some of the more "formulaic" features of statutory construction, it can be tempting for a court to equate the two—to deem the construction that it ultimately adopts to have been "obvious." Such a *post hoc* characterization impermissibly conflates consideration of the propriety of plain error review with the resolution of the merits. To be sure, the two are innately intertwined—it is, after all, impossible to assess whether a proposition is beyond reasonable dispute without at least some evaluation of its merits. And, if a proposition *is* deemed to be "not reasonably in dispute," that is, necessarily, conclusive as to its merits. But the obverse is not true: Ostensibly (and actually) meritorious contentions are often subject to reasonable, albeit ultimately unavailing, dispute. Thus, *Brown*'s second criterion contemplates, and mandates, assessment not only of the appellant's contention, but also of reasonable countervailing matters, including those urged by the respondent.

With that understanding, we proceed.

The construction of ORS 163.465(2)(b) that defendant espouses is straight-forward. As noted above, 277 Or App at 714, that construction depends on the premise that a defendant who is convicted of an attempted sex crime is convicted of a crime "described" exclusively in ORS 161.405—and, hence, not "described in ORS 163.355 to 163.445."[11] ORS 161.405 provides, in part:

---

[11] We do not understand defendant to contend that, if the predicate crime is "described in" some *combination* of a referent chapter 163 statute and another statute (*e.g.*, ORS 161.405), enhancement under ORS 163.465(2)(b) is not

"(1) A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime.

"(2) An attempt is a:

"* * * * *

"(b) Class B felony if the offense attempted is a Class A felony.

"(c) Class C felony if the offense attempted is a Class B felony."

Given that ORS 161.405 defines the elements of criminal attempt as well as the applicable crime classification(s), and given that no other statute (including in chapter 163) includes similar content, defendant's contention that his prior Oregon convictions were not for a crime "described in" the operative provisions of chapter 163 is certainly plausible.

The difficulty for defendant—a dispositive difficulty in this plain error posture—is that the legislatively intended meaning of "described in" is far from "obvious." *Brown*, 310 Or at 355. That is so, not the least, because of the amorphous content of that term.

Consistently with the methodology prescribed in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), we consider the statute's text in context, with reference to pertinent legislative history. We note, initially, that the potentially applicable common understandings of "describe" in this context include the following:

"**1 :** to represent by words written or spoken for the knowledge or understanding of others: * * * **b :** to transmit a mental image, an impression, or an understanding of the nature and characteristics of (something immaterial) * * * **d :** to distinguish by a definitive label or other designation[.]"

*Webster's Third New Int'l Dictionary* 610 (unabridged ed 2002). Thus, a crime is, at least arguably, "described in" a statute if that statute "transmit[s] * * * an understanding of the nature and characteristics of" that crime, or,

---

available. Rather, defendant's construct proceeds from the premise that the prior Oregon convictions are for crimes "described" solely in ORS 161.405.

alternatively, if that statute "definitive[ly] label[s] or * * * designat[es]" that crime. *Webster's* at 610.

The first of those alternatives reasonably comports with the state's construction of ORS 163.465(2)(b). That is, the "nature and characteristics" of the crime of attempted first-degree rape or attempted first-degree sexual abuse cannot be understood solely by reference to ORS 161.405; rather, such an "understanding" (including with respect to what constitutes an actionable "substantial step") requires reference also to the substantive sex offense statutes. Thus, under that definition of "describe" and consistent with the state's view, defendant's prior convictions were for crimes "described," at least in material part, in, respectively, ORS 163.427 and ORS 163.375.

Conversely, the second, "definitive[ly] label[s] or designat[es]" definition, comports with defendant's position. That is, at least arguably, the "definitive label" or "designation" of the crimes for which defendant was previously convicted in Oregon was criminal attempt, ORS 161.405.[12]

Each party proffers some context as corroborating its construction. Defendant notes that, as of the time that the operative language in ORS 163.465(2)(b) was enacted in 1999, *see* 277 Or App at 711 n 3, the legislature had previously explicitly identified convictions for attempted sex offenses as qualifying predicates for sex offender registration. *See* ORS 181.595 (1997), *incorporating by reference* ORS 181.594(2)(L) (1997).[13] Thus, defendant reasons, if the legislature had intended to include convictions for attempted sex crimes within the purview of ORS 163.465(2)(b), it knew how to do so. The state, as noted above, remonstrates that the inclusion of convictions for misdemeanor sex offenses within the range of qualifying predicates for purposes of ORS 163.465(2)(b) suggests, contextually, that

---

[12] While the 2005 Multnomah County judgment so "designated" defendant's crime of conviction, the 1986 Yamhill County "Judgment Order" included no such specification.

[13] That is the same formulation that, as noted in *Sokell*, 273 Or App at 655-56, the legislature later employed with respect to predicate crimes for purposes of imposing sentence under ORS 137.719(1).

the legislature intended to also include, at least, felony convictions for attempted sex offenses, including attempted first-degree rape and attempted first-degree sexual abuse.[14] Without commenting on the relative merit of those cross-cutting contextual contentions, it suffices to observe that defendant's is not so conclusive as to render his construction beyond reasonable dispute.

Finally, neither party identifies pertinent, much less compelling, legislative history.

We reiterate: If the issue of the correct construction of ORS 163.465(2)(b) had been presented to us in the context of a preserved claim of error, we would be obligated to resolve that matter. Here, however, our threshold consideration is limited to whether defendant has demonstrated that the construction he urges is "not reasonably in dispute." *Brown*, 310 Or at 355. For the reasons manifest in the foregoing discussion—and with the patent disclaimer that we imply no view as to the merits in a preserved posture—we conclude that defendant's unpreserved contention fails to satisfy *Brown*'s second criterion. Accordingly, we reject defendant's second and third assignments of error as unreviewable and affirm his conviction for felony public indecency.

B. *Constitutionality of Imposition of Sentence Pursuant to ORS 137.719(1)*

In defendant's fourth and fifth assignments of error, he challenges his sentence of life imprisonment without the possibility of release or parole, ORS 137.719(1), as being impermissibly disproportionate in violation of Article I,

---

[14] In that regard, we note parenthetically that, as a matter of historical context, reported appellate decisions evince a pervasive, though hardly invariable, practice of referring to two statutes when charging an attempted crime: the statute defining attempts and the statute defining the crime attempted. Courts, in entering judgments of conviction, have done the same. That practice was extant as of the time the operative language in ORS 163.465(2)(b) was enacted. *See, e.g.*, *State v. Gherasim*, 329 Or 188, 190, 985 P2d 1267 (1999) (noting that the defendant had been charged with attempted first-degree rape pursuant to "ORS 161.405 and ORS 163.375"); *State v. Hayward*, 327 Or 397, 399, 963 P2d 667 (1998) (noting that the defendant had been convicted of "two counts of attempted aggravated murder, ORS 161.405; ORS 163.095"); *State v. Vancleave*, 163 Or App 252, 254, 989 P2d 473 (1999) (noting that the defendant had been convicted of, *inter alia*, "attempted assault in the first degree, ORS 163.185 and ORS 161.405(2)(b)").

section 16,[15] and the Eighth Amendment.[16] Defendant also asserts, in fairly summary fashion, that the application of ORS 137.719(1) here violated the Equal Protection Clause of the Fourteenth Amendment, because the sentencing scheme "applies to sexual recidivists who expose their genitals, but it does not apply to sexual recidivists who commit a number of similar or worse sex crimes," and is, thus, irrationally underinclusive.

With respect to his state and federal disproportionality challenges, defendant asserts that imposition of a true life sentence triggered by the "relatively inoffensive" (in his characterization) crime of public indecency, which involved no violence or physical contact with others, "shocks the moral sense of reasonable persons." *State v. Wheeler*, 343 Or 652, 668, 175 P3d 438 (2007). Defendant asserts that when the penalty for public indecency is considered in light of the gravity of the offense itself and in comparison with the penalty for more serious sex crimes involving force and nonconsensual touching, *see, e.g.*, ORS 163.415 (third-degree sexual abuse); ORS 163.435 (contributing to the sexual delinquency of a minor); ORS 163.687 (third-degree encouraging child sexual abuse), it becomes apparent that the sentence is disproportionate.

The state remonstrates that (1) ORS 138.222(2)(a) precludes review of defendant's challenges;[17] and (2) in all events, under the analysis prescribed in *State v. Rodriguez/*

---

[15] Article I, section 16, provides, in part, that "all penalties shall be proportioned to the offense." Defendant acknowledges that in *State v. Wheeler*, 343 Or 652, 678-79, 175 P3d 438 (2007), the Supreme Court has held that ORS 137.719(1) is not facially unconstitutional in violation of Article I, section 16.

[16] The Eighth Amendment to the United States Constitution provides, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Defendant predicates his Eighth Amendment challenge on the "narrow proportionality principle" recognized under that provision with respect to noncapital sentences. *Harmelin v. Michigan*, 501 US 957, 996-97, 111 S Ct 2680, 115 L Ed 2d 836 (1991). Defendant's contention in that respect parallels his state disproportionality challenge.

[17] ORS 138.222(2) provides, in part:

"[O]n appeal from a judgment of conviction entered for a felony committed on or after November 1, 1989, the appellate court may not review:

"(a) Any sentence that is within the presumptive sentence prescribed by the rules of the Oregon Criminal Justice Commission."

*Buck*, 347 Or 46, 217 P3d 659 (2009), defendant's challenges fail on the merits. At the outset, we reject the state's nonreviewability argument for the reasons expressed in *Davidson*, 271 Or App at 722 n 5. As to the merits, for the reasons that follow, we reject defendant's challenges.

ORS 137.719 provides, in pertinent part:

"(1) The presumptive sentence for a sex crime that is a felony is life imprisonment without the possibility of release or parole if the defendant has been sentenced for sex crimes that are felonies at least two times prior to the current sentence.

"(2) The court may impose a sentence other than the presumptive sentence provided by subsection (1) of this section if the court imposes a departure sentence authorized by the rules of the Oregon Criminal Justice Commission based upon findings of substantial and compelling reasons.

"* * * * *

"(4) As used in this section, 'sex crime' has the meaning given that term in ORS 163A.005."

ORS 163A.005(5),[18] in turn, defines "sex crime" to include "[a]ny attempt to commit [any degree of rape or sexual abuse]," ORS 163A.005(5)(x), and "[p]ublic indecency * * *, if the person has a prior conviction for a crime listed in this subsection." ORS 163A.005(5)(t). Because defendant's felony public indecency conviction is a felony sex crime and defendant has at least two previous felony sex crime convictions, the state, as noted, asked the court to impose the presumptive sentence of life imprisonment without the possibility of release or parole, ORS 137.719(1), and the trial court, after expressing its reasoning at some length, *see* 277 Or App at 712-13, did so.

In assessing defendant's as-applied disproportionality challenges under Article I, section 16, we adhere to the construct applied and refined in *Rodriguez/Buck* and are

---

[18] When defendant committed the crime at issue in this case, the definition of "sex crime" was found in *former* ORS 181.594 (2007), *renumbered as former* ORS 181.805 (2013), *renumbered as* ORS 163A.005 (2015). Thereafter, the legislature amended those former statutes several times in ways that are immaterial to our analysis. Thus, we refer to ORS 163A.005 throughout this opinion.

especially guided by the analysis of *Davidson* and *Sokell*. In *Rodriguez/Buck*, the Supreme Court predicated its consideration of the alleged disproportionality of the sentences on three nonexclusive factors: "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." 347 Or at 58.

With respect to the first of those considerations, defendant, as noted, posits that his conduct was "relatively inoffensive" in that it did not involve violence or physical contact with another person—and, thus, in that respect is materially distinct from such offenses as rape or sexual abuse (both of which, like felony public indecency, are "sex crimes" for purposes of imposition of a sentence pursuant to ORS 137.719(1)). Defendant acknowledges that, in the context of ORS 137.719(1), which is predicated on a *history* of sexual offenses, the relative seriousness of felony public indecency, the immediate precipitating offense, cannot be viewed in isolation; nevertheless, defendant asserts that the imposition of a "true life" sentence—as opposed to an indeterminate life sentence of the sort sustained in *Jensen v. Gladden*, 231 Or 141, 142-43, 372 P2d 183 (1962)—is unconstitutionally disproportionate.

With respect to the second *Rodriguez/Buck* factor (the comparison of penalties for other, related crimes), defendant contends that other, "worse" crimes, including, *e.g.*, unlawful contact with a child (ORS 163.479), are not included in the listing in ORS 163A.005 of predicate felony sex crimes for purposes of ORS 137.719 and that a variety of "equally or more serious" Class A misdemeanors, including, *e.g.*, third-degree sexual abuse (ORS 163.415) and private indecency (ORS 163.467) when committed by a sexual recidivist, similarly are not predicates for imposition of an ORS 137.719(1) sentence.

Finally, with respect to his criminal history, defendant acknowledges that he is a "sexual recidivist" and, of his three prior convictions, two involved the use of force and two involved children. Nevertheless, he emphasizes that his conduct in this instance did not involve a minor or the use of force.

In *Davidson*, in which the trial court imposed a sentence under ORS 137.719(1) based on the defendant's serial convictions for public indecency, we had occasion to consider many of the same contentions—albeit in what we ultimately determine to be dispositively different circumstances. 271 Or App at 721. There, after the defendant had been convicted of two counts of public indecency, the court imposed two consecutive sentences under ORS 137.719(1) based on the convictions in combination with three prior convictions for public indecency (all of which involved masturbation in public). *Id.* Thus, all of the defendant's predicate convictions were for public indecency; several of those incidents, none of which involved physical touching of others, were in the presence of children. *Id.* at 731-32.

In considering (and ultimately sustaining) the defendant's disproportionality challenge, we emphasized at the outset that, in the context of a recidivist statute, the proper comparison under the *Rodriguez/Buck* construct is not limited to reference to the defendant's *ultimate* offense; instead, that comparison properly encompasses *all* of a defendant's predicate convictions. *Davidson*, 271 Or App at 738. We then assessed the circumstances of each of the defendant's convictions for public indecency and determined that there was a "disparate gravity of behavior" between that conduct in its detail and totality and the recidivist conduct in other cases in which disproportionality challenges to sentences under ORS 137.719(1) had been rejected. *Id.* at 739-40.

We proceeded to the second *Rodriguez/Buck* factor and, in undertaking the prescribed comparison, we observed that "[w]e find it particularly helpful to consider other sex crimes that do not subject recidivists to a true life sentence." *Davidson*, 271 Or App at 741. In that regard, our consideration tracked almost identically the analysis proffered by defendant in this case, and we concluded that that consideration also militated in favor of a determination of disproportionality. *Id.* at 742-43.

Finally, with respect to the defendant's criminal history in *Davidson*, we noted, consistently with *Rodriguez/Buck*, 347 Or at 77, that that consideration encompasses not only previous criminal convictions but also "whether there

is evidence of multiple instances of uncharged wrongful conduct." *Davidson*, 271 Or App at 744. We summarized our determination: "Although defendant has a long history of trouble with the law, his criminal history does not involve sexual offenses, conduct with sexual overtones, or sexual behavior involving forcible compulsion." *Id.* at 745. Consequently, that consideration also "point[ed] to a conclusion of disproportionality." *Id.* We concluded:

"*** [F]ive episodes of public indecency, when—as here—accompanied by no meaningful evidence of force or violence and no other forcibly violent sexually charged conduct, when compared with other recidivist penalties, do not constitute the kind of criminal history that can constitutionally justify incarcerating a person with no chance of release."

*Id.* at 745.

Thus, central to our analysis and disposition in *Davidson* was the circumstance that all of the defendant's predicate crimes were for public indecency—that is, the only conduct on which the ORS 137.719(1) sentence was predicated was serial public masturbation that did not involve the use of force or physical contact with others. That circumstance was critical to our assessment of *Rodriguez/Buck*'s first consideration. Also critical to our holding—and, specifically, to our assessment of the defendant's criminal history—was that he did not have a substantial history of other, uncharged sexual offenses.

In *Sokell*, the circumstances were very different. There, the court imposed a sentence under ORS 137.719(1) after the defendant had been convicted of, *inter alia*, first-degree sexual abuse based on his conduct in "rubbing the buttocks of an eight-year-old girl whom he encountered in a public library." 273 Or App at 655. The defendant's prior felony convictions were for first-degree sexual abuse (for touching the breast of a 12-year-old girl) and attempted first-degree sexual abuse (for rubbing a seven-year-old girl under her dress but over her swimming suit). *Id.*

In rejecting the defendant's disproportionality challenge to that sentence, we began by noting the Supreme Court's admonition in *Wheeler*, 343 Or at 671, that "a court will hold a sentence unconstitutional *** only in rare

circumstances." *Sokell*, 273 Or App at 656. After emphasizing that the defendant's predicate offenses, involving sexual touching of young girls, were, in fact, serious, we concluded by summarizing the balance of the defendant's criminal history, including his extensive and egregious uncharged misconduct, which we characterized as "the strongest confirmation that this case is within the range of cases in which the life sentence under ORS 137.719 does not violate Article I, section 16." *Id.* at 658. Specifically:

> "* * * [defendant] does have extensive uncharged misconduct that resembles the conduct that led to his convictions. * * * * [H]e admitted that, before his arrest for [one] offense, he regularly sought out girls between the ages of seven and 12 and touched them inappropriately, estimating that he had more than 100 victims. At one point, defendant admitted to having forcibly raped a 10-year-old girl * * *."

*Id.*

The circumstances of this case are much more akin to those in *Sokell* than in *Davidson*. Here, defendant's predicate convictions were not solely (as in *Davidson*) for public indecency. Rather, as in *Sokell*, those convictions (with the exception of defendant's ultimate conviction) pertained to other sexual conduct, including the use of force and conduct directed towards minors. To be sure, if viewed *in isolation*, defendant's conviction for public indecency is for conduct less serious (as we observed in *Davidson*) than other criminal sexual conduct that can serve as a predicate for the imposition of an ORS 137.719(1) sentence—but, again, as we and the Supreme Court have repeatedly emphasized, the assessment of purported disproportionality in the application of a recidivist sentencing scheme requires assessment of the totality of the defendant's criminal conduct and not merely of the ultimate offense. *See, e.g., Davidson*, 271 Or App at 738. Finally, and perhaps most powerfully, here, as in *Sokell*, defendant's egregious (and unapologetically proclaimed) uncharged misconduct, and particularly his extensive history of criminal conduct with young girls,[19] refutes

---

[19] For example, in one letter sent from prison, defendant wrote that he does not like to use force, and had only done so a few times:

> "In Oregon there are three classes of offenders, sex offender[s], predatory sex offender[s] and sexually violent predator[s], these are the worst. I'm in

any implication of unconstitutional disproportionality. The trial court's remarks, *see* 277 Or App at 712-13, say it all.

We thus reject defendant's challenge under Article I, section 16. For the same reasons, we reject his essentially congruent challenge under the Eighth Amendment.

Finally, we reject without extensive discussion defendant's contention that ORS 137.719(1) violates the Equal Protection Clause, as applied to his conviction for felony public indecency, because it is underinclusive, in that it does not apply to other crimes of the same or similar character including the felonies of first-degree custodial sexual misconduct, ORS 163.452, and unlawful contact with a child, ORS 163.479, and the Class A misdemeanors of second-degree custodial sexual misconduct, ORS 163.454, unlawfully being where children regularly congregate, ORS 163.476, and invasion of personal privacy, ORS 163.700. A statute does not violate the Equal Protection Clause if it bears a rational relationship to a legitimate state interest. *Romer v. Evans*, 517 US 620, 631, 116 S Ct 1620, 134 L Ed 2d 855 (1996). A law may be so overinclusive or underinclusive that no rational relationship can be discerned. *Id.* at 631-32.

In *State ex rel Huddleston v. Sawyer*, 324 Or 597, 932 P2d 1145, *cert den*, 522 US 994 (1997), in rejecting a federal equal protection challenge to ORS 137.700, the Supreme Court emphasized that, even if a statute is ostensibly underinclusive because it does not include all violent felonies, the United States Supreme Court "ordinarily does not strike down criminal laws on that ground under the rational-basis test used for Equal Protection analysis." *Id.* at 629 (citing *Romer*, 517 US at 631, and *Jones v. Helms*, 452 US 412, 426, 101 S Ct 2434, 69 L Ed 2d 118 (1981)). Here, as in *Huddleston*, we conclude that, although ORS 137.719

---

the middle group, predatory sex offender because I don't enjoy violence and because with girls that are young I always talk them into letting me do it.

"I am very manipulative when it comes to sexual intercourse with younger girls. * * * [I]t had always happened with daughters of women I'm dating or who are my girlfriend. In the past it was extremely hard to resist opportunities to have sex. Believe it or not I am very good with kids, younger girls always like me and I'm very cool. The mothers always trust me because I'm honest about my past and all the things I did, both raping women and having sex with little girls."

does not encompass every sex crime, the legislative choice of predicate offenses is, at the least, "rational[ly] relat[ed] to some legitimate end" of protecting the public from recidivist criminal sexual offenders. 324 Or at 629.

Affirmed.