Submitted February 25, reversed June 9, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JENNIFER GRACE GAYMAN,
*Defendant-Appellant.*

Curry County Circuit Court
18CR81255; A171373

492 P3d 130

Defendant appeals a judgment of conviction for fleeing or attempting to elude a police officer, ORS 811.540(1)(b)(A). On appeal, defendant asserts that the trial court plainly erred when it failed to enter a judgment of acquittal *sua sponte*. She argues that she was not operating a "motor vehicle," which is an essential element of fleeing or attempting to elude a police officer. *Held*: Defendant was not operating a "motor vehicle" for purposes of ORS 811.540(1)(b)(A) and the trial court plainly erred in failing to grant acquittal *sua sponte*, and the Court of Appeals exercised its discretion to reverse the judgment of conviction.

Reversed.

Jesse C. Margolis, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and John Evans, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Weston Koyama, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

Reversed.

Powers, J., dissenting.

**ORTEGA, P. J.**

Defendant appeals a judgment of conviction for fleeing or attempting to elude a police officer, ORS 811.540 (1)(b)(A). On appeal, defendant asserts (among other things) that the trial court plainly erred when it failed to enter a judgment of acquittal *sua sponte*. She argues that she was not operating a "motor vehicle," which is an essential element of fleeing or attempting to elude a police officer. We conclude that defendant was not operating a "motor vehicle" for purposes of ORS 811.540(1)(b)(A) and that the trial court plainly erred in failing to grant acquittal *sua sponte*, and we exercise our discretion to reverse the judgment of conviction. As a result, we do not reach defendant's other assignments of error.[1]

When evaluating defendant's argument that she was entitled to a judgment of acquittal, we view the facts in the light most favorable to the state. *State v. Litscher*, 285 Or App 508, 510, 397 P3d 511, *rev den*, 362 Or 94 (2017). Accordingly, we summarize the pertinent facts consistent with that standard.

Defendant was initially stopped by officers from the Brookings Police Department for traffic violations committed while operating her motor assisted scooter. The officers explained that they had stopped her for not wearing a helmet and for operating her motor assisted scooter on the sidewalk and crosswalk, and cited her for those offenses.[2] Defendant protested the stop and explained that she was riding a "mobility scooter" that she used because of her disability. She distinguished her scooter from other motor vehicles by asserting that her scooter did not operate above 23 miles per hour and that it only had three wheels. The

---

[1] For her third and fourth assignments, defendant contends, and the state concedes, that the trial court plainly erred in giving a nonunanimous jury instruction and in receiving a nonunanimous guilty verdict. We note that for the reasons explained in *State v. Ulery*, 366 Or 500, 464 P3d 1123 (2020), we ordinarily would reverse and remand on that ground. However, because defendant should have been granted a judgment of acquittal *sua sponte*, we resolve the appeal on that basis.

[2] ORS 814.524 (unsafe operation of motor assisted scooter on sidewalk), ORS 814.534 (failure of motor assisted scooter operator to wear protective headgear, which carries a presumptive fine of $25), and ORS 814.528 (operation of motor assisted scooter in crosswalk).

officers did not contest the fact that defendant's scooter was operated for mobility purposes, and even acknowledged that it was electric- and not gas-powered, but, they maintained their position that she was violating Oregon law.

While the officers were drafting the citation, defendant complained that she was cold, that the stop violated her disability rights, and that it was taking too long. Since one officer was being trained, the record reflects in-depth discussions between the officers and some with defendant that illustrate that the consensus between the parties was that defendant was operating a motor assisted scooter not a motor vehicle and that the officers were acting based on the section of the vehicle code governing motor assisted scooters. After handing defendant the citation, one of the officers informed her that she was not free to drive her scooter home without a helmet and that, if she proceeded to do so, she would go to jail. Defendant proceeded to drive her scooter home without a helmet, and the officers followed her with their lights and sirens on in a "low speed pursuit" for two to three minutes. Once defendant arrived at her home, the officers arrested her and charged her with fleeing or attempting to elude a police officer, ORS 811.540.[3]

During a jury trial, the state presented body camera footage showing the initial interaction, the "low speed pursuit," and defendant's arrest. The state argued that the scooter was a motor vehicle because it fit the definition of a vehicle that is "self-propelled or designed for self-propulsion" within the meaning of ORS 801.360. Defendant did not

---

[3]  ORS 811.540 states, in relevant part:

"(1)  A person commits the crime of fleeing or attempting to elude a police officer if:

"(a)  The person is operating a *motor vehicle*; and

"(b)  A police officer who is in uniform and prominently displaying the police officer's badge of office or operating a vehicle appropriately marked showing it to be an official police vehicle gives a visual or audible signal to bring the vehicle to a stop, including any signal by hand, voice, emergency light or siren, and either:

"(A)  The person, while still in the vehicle, knowingly flees or attempts to elude a pursuing police officer; or

"(B)  The person gets out of the vehicle and knowingly flees or attempts to elude the police officer."

(Emphasis added.)

contest that she was operating a motor vehicle but, after the state rested its case, she moved for a judgment of acquittal asserting that there was no evidence that she fled from the officers. The court denied the motion, and defendant ultimately was found guilty by a nonunanimous verdict.

On appeal, defendant argues that the trial court plainly erred when it failed to enter a judgment of acquittal *sua sponte* because the scooter she was operating was not a "motor vehicle" for purposes of the Oregon Vehicle Code. She explains that, if her mobility scooter constituted a motorized wheelchair, then she was either a pedestrian or, if operating in a bicycle lane, was "operating merely as a 'vehicle.'" Either way, defendant argues, she was not operating a "motor vehicle" and, because her charge required proof that she was operating a motor vehicle, the trial court plainly erred when it entered a conviction. She requests that we review for plain error under ORAP 5.45(1) and exercise our discretion to correct the error.

The state maintains that the trial court did not plainly err. According to the state, a motorized wheelchair meets the definition of a "motor vehicle" in ORS 801.360 and "thus plausibly qualifies as a 'motor vehicle' for purposes of ORS 811.540," which precludes plain error review.

Generally, a trial judge must grant a motion for judgment of acquittal if the evidence presented by the state is insufficient to allow a rational trier of fact to conclude that the defendant committed each element of the crime charged. *State v. Davis*, 194 Or App 382, 390, 95 P3d 230 (2004), *adh'd to as modified on recons*, 197 Or App 1, 104 P3d 602 (2005). Because defendant did not preserve her argument below, she faces the additional obstacle of establishing that the trial court committed an error that is plain. *Litscher,* 285 Or App at 514. Whether defendant's motor assisted scooter qualifies as a "motor vehicle" for the purposes of ORS 811.540 is a legal question that we review for legal error. An error is plain if it (1) is a legal error; (2) is obvious and not reasonably in dispute; and (3) appears on the record, meaning that we do not have to choose between competing inferences to find it. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990).

Considering those standards together, to establish that the trial court plainly erred by not *sua sponte* acquitting defendant of fleeing or attempting to elude a police officer, she must demonstrate that it is "obvious and not reasonably in dispute" that no reasonable trier of fact could find that she was operating a "motor vehicle." We conclude that defendant established that the trial court plainly erred.

We begin our analysis by comparing "motor assisted scooter[s]," motorized wheelchairs, and "motor vehicle[s]" for purposes of the vehicle code. ORS 801.348 defines a "motor assisted scooter" as "a vehicle" that

"(1)  Is designed to be operated on the ground with not more than four wheels;

"(2)  Has a foot support or seat for the operator's use;

"(3)  Can be propelled by motor or human propulsion; and

"(4)  Is equipped with a power source that is incapable of propelling the vehicle at a speed of greater than 24 miles per hour on level ground and:

"(a)  If the power source is a combustion engine, has a piston or rotor displacement of 35 cubic centimeters or less regardless of the number of chambers in the power source; or

"(b)  If the power source is electric, has a power output of not more than 1,000 watts."

A "vehicle," in turn, is defined as "any device in, upon or by which any person or property is or may be transported or drawn upon a public highway and includes vehicles that are propelled or powered by any means." ORS 801.590. The vehicle code does not define "motorized wheelchair" but the dictionary defines "wheelchair" as a "chair mounted on wheels and usually propelled by the occupant by means of hand rims attached to the large side wheels." *Webster's Third New Int'l Dictionary* 930 (unabridged ed 2002). A "motor vehicle" for the purposes of the vehicle code is "a vehicle that is self-propelled or designed for self-propulsion." ORS 801.360. Significant to our analysis is the choice the legislature made in defining a "motor assisted scooter" as including scooters "equipped with a power source," but

otherwise specifically defining it as a "vehicle" and not a "motor vehicle." *Compare, e.g.*, ORS 801.193 - 801.194 (defining Class II, III, and IV all-terrain vehicles as, respectively, a "motor vehicle," a "motorcycle," and a "motorized vehicle"); ORS 801.295 (defining "golf cart" as a "motor vehicle"); *and* ORS 801.341 (defining "medium-speed electric vehicle" as an "electric motor vehicle" with a maximum speed of 35 miles per hour) *with* ORS 801.258 (defining "electric assisted bicycle" as a "vehicle" not capable of a speed more than 20 miles per hour); ORS 801.345 (defining "moped" as a "vehicle" not capable of a speed more than 30 miles per hour); *and* ORS 801.259 (defining "electric personal assistive mobility device" as a "device" with a maximum speed of 15 miles per hour).

The vehicle code also contains provisions that specifically apply to motor assisted scooters. ORS 814.510 provides:

"An operator of a motor assisted scooter upon a public way is subject to the provisions applicable to, and has the same rights and duties as the operator of, any other *vehicle* operating on highways except:

"(1)   Those provisions that by their very nature can have no application.

"(2)   When otherwise specifically provided under the vehicle code."

(Emphasis added.) A "public way" is included within the definition of "highway" under the vehicle code. ORS 801.305. The provisions in the motor assisted scooter portion of the vehicle code explicitly regulate "motor assisted scooters" differently from "motor vehicles." *See, e.g.*, ORS 814.512 (prohibiting operation of a motor assisted scooter at a rate exceeding 15 miles per hour); ORS 814.518 (providing that a motor assisted scooter may not be operated on a highway with a speed limit of over 25 miles per hour except in a bicycle lane or to cross the highway); ORS 814.520 (providing that, outside a few exceptions, a motor assisted scooter may not operate in a lane on a roadway at less than the normal speed of traffic); ORS 811.440(4) - (5) (exempting motorized wheelchairs and motorized assisted scooters from the prohibition against operating a motor vehicle in a bicycle lane

or path); *see also* ORS 811.050 (penalizing a motor vehicle that fails to yield to a person operating a bicycle, electric assisted bicycle, electric personal assistive mobility device, moped, motor assisted scooter, or motorized wheelchair on a bicycle lane). Further, in at least one instance, the code makes a distinction between an operator of a motor assisted scooter and a person with a disability operating a motor assisted scooter.[4] ORS 814.528 (requiring an operator of a motor assisted scooter to walk the scooter in a crosswalk but providing the section does not apply to "a person with a disability operating a motor assisted scooter in a crosswalk").[5]

Additionally, parts of the vehicle code distinguish between the operator of a "motor assisted scooter" and a "pedestrian."[6] For example, ORS 814.526 provides that it is unlawful to operate a motor assisted scooter in a bicycle path or lane without giving an audible warning before overtaking and passing a pedestrian or without yielding to pedestrians. However, other parts of the vehicle code treat

---

[4] A "person with a disability" is defined as:

"(1) A person who has severely limited mobility because of paralysis or the loss of use of some or all of the person's legs or arms;

"(2) A person who is affected by loss of vision or substantial loss of visual acuity or visual field beyond correction; or

"(3) A person who has any other disability that prevents the person from walking without the use of an assistive device or that causes the person to be unable to walk more than 200 feet, including but not necessarily limited to:

"(a) Chronic heart condition;

"(b) Emphysema;

"(c) Arthritis;

"(d) Rheumatism; or

"(e) Ulcerative colitis or related chronic bowel disorder."

ORS 801.387.

[5] We recognize that the vehicle code is not as clear with respect to a disabled person operating a motor assisted scooter on a sidewalk. *See* ORS 814.524 (providing that "[a] person commits the offense of unsafe operation of a motor assisted scooter on a sidewalk if the person operates a motor assisted scooter on a sidewalk, except to enter or leave adjacent property, or the person operates a motor assisted scooter on a sidewalk to enter or leave adjacent property and the person: [listing four specific unsafe operations]"). However, we find it unnecessary to construe that statute to reach our disposition in this case. Whether that statute can lawfully operate to prohibit such operation by a disabled person is a question for another day.

[6] ORS 801.385 defines "pedestrian" for purposes of the vehicle code as "any person afoot or confined in a wheelchair."

"pedestrians" and "wheelchairs" similarly, while distinguishing them both from "motor vehicles." *See, e.g.*, ORS 811.028 (penalizing motor vehicles that fail to stop for crossing pedestrians and explaining that a pedestrian is crossing the roadway in a crosswalk "when any part or extension of the pedestrian, including but not limited to any part of the pedestrian's body, wheelchair, cane, crutch or bicycle moves onto the roadway in a crosswalk with the intent to proceed").

Here, defendant likens her case to *State v. Greene*, 283 Or App 120, 388 P3d 1132 (2016), which evaluated whether, and to what extent, the operator of a motorized wheelchair is the driver of a vehicle for purposes of the statutes governing driving under the influence of intoxicants (DUII). The defendant's DUII conviction in that case involved his operation of his motorized wheelchair in a crosswalk on a city street while intoxicated. *Id.* at 121. He argued that "a person crossing a street in a crosswalk in a motorized wheelchair is a pedestrian and not the operator of a vehicle for purposes of the DUII statutes," noting that the legislature would have expressed (but did not do so) any intention to treat someone in a motorized wheelchair as a vehicle operator as it did elsewhere in the code. *Id.* (citing ORS 814.500, which treats motorized wheelchairs as bicycles when operated on a bike lane or path). The state argued in response that, because the definition of "vehicle" in ORS 801.590 is broad enough to include motorized wheelchairs, the DUII statute applies to operators of motorized wheelchairs when they use their wheelchairs on premises open to the public. *Id.*

We reversed, concluding that "a person operating a motorized wheelchair in a crosswalk is a pedestrian and not a driver of a vehicle for the purposes of the DUII statutes." *Id.* We explained that the vehicle code creates a basic dichotomy between pedestrians and vehicle operators and reasoned that that dichotomy "evinces a legislative intention not to treat a person simultaneously as a pedestrian and the driver of a vehicle" and that "pedestrians generally are not subject to the provisions of the vehicle code that apply to vehicles and their operators." *Id.* at 123. Our review of the legislative history of the relevant portions of the vehicle code supported that understanding, particularly the testimony of

Municipal Judge Wayne M. Thompson, who explained that "people in wheelchairs should be included among pedestrians in the vehicle code 'so they can be considered within the scheme of traffic control and rights of way.'" *Id*. at 124-25. Ultimately, we were persuaded that the "dichotomy that pervades the vehicle code between pedestrians and operators of vehicles decisively evinces a legislative intention not to subject people in motorized wheelchairs to the DUII statutes when they are traveling as pedestrians in crosswalks." *Id*. at 126.

Although our holding in *Greene* was specific to the application of the DUII statutes to the operator of a motorized wheelchair, our reasoning in that case is applicable here. As in *Greene*, the relevant laws in the vehicle code evince a legislative intention to not treat a person simultaneously as an operator of a motor assisted scooter and the operator of a motor vehicle. There is a stark difference made in the vehicle code between the operation of a motor assisted scooter and the operation of a motor vehicle, and the code repeatedly refers to a motor assisted scooter as a "vehicle" but never as a "motor vehicle." Operators of motor assisted scooters are not generally subject to the provisions of the vehicle code that apply to motor vehicles and their operators. By their nature, motor assisted scooters are not physically capable of operating in the same manner as a motor vehicle, and the vehicle code reflects that distinction.

Moreover, the vehicle code contains provisions that demonstrate an intent to protect operators of motor assisted scooters, along with pedestrians and operators of motorized wheelchairs, from operators of motor vehicles. *See, e.g.*, ORS 811.050 (protecting operators of motorized wheelchairs and operators of motor assisted scooters from operators of motor vehicles failing to yield upon a bicycle lane); ORS 814.528 (allowing a person with a disability to operate a motor assisted scooter in a crosswalk); ORS 801.220 (defining "crosswalk," as, among other things, "any portion of a roadway at an intersection or elsewhere that is distinctly indicated for pedestrian crossing by lines or other markings on the surface of the roadway"). We find no evidence of a contrasting intention to treat operators of motor assisted scooters as operators of motor vehicles for the purpose of ORS

811.540(1)(b)(A), prohibiting fleeing or attempting to elude a police officer.

Here, an essential element of the offense of fleeing or attempting to elude a police officer was that defendant had to be operating a motor vehicle. The state did not put on any evidence that defendant was operating a motor vehicle when she, a disabled person, operated her motor assisted scooter in a sidewalk and crosswalk and then left the scene, after being stopped and cited by police. It was the state's burden to prove that essential element of the case, and it could not be met by merely showing that defendant was operating a motor assisted scooter. As set out above, the vehicle code unambiguously does not treat a motor assisted scooter as a motor vehicle. Consequently, the state did not prove an essential element of the crime of fleeing or attempting to elude a police officer. We conclude that defendant was entitled to a judgment of acquittal.

We next address whether the trial court committed a plain error in not granting a judgment of acquittal *sua sponte*. We previously held in *Greene* that a person operating a motorized mobility device cannot be treated both as a pedestrian and as an operator of a motor vehicle under the vehicle code; likewise here, it is obvious and not reasonably in dispute that defendant was not operating a motor vehicle under the vehicle code when she was operating her motor assisted scooter that she used due to a disability. The error in charging her as an operator of a motor vehicle appears on the face of the record, requiring us to determine whether to exercise our discretion to address that plain error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991).

In determining whether to exercise our discretion, we consider, among other things,

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation have been served in the case in another way[.]"

*Id.* at 382 n 6.

Here, the gravity of the error and the ends of justice move us to exercise our discretion to correct the error. A felony conviction based on insufficient evidence is a substantial error and strongly militates in favor of exercising discretion to correct such an error when it is plain. *State v. Reynolds*, 250 Or App 516, 522, 280 P3d 1046, *rev den*, 352 Or 666 (2012). Defendant has a strong interest in having a criminal record that accurately reflects the nature and extent of her conduct. A conviction for fleeing a police officer is a felony that carries significant potential consequences, including jail time and probation. We also agree with defendant that exercising our discretion would not undermine the policies underlying the preservation rule in favor of full development of the record, as we see no strategic reason for her failure to make the argument below. The body camera footage showed the operation of defendant's motor assisted scooter; this is not a case where, had the error been timely raised, the state could have corrected the deficiency in its proof.

A case such as this, where the undisputed evidence establishes that the state cannot prove an element of the crime, constitutes the sort of exceptional circumstance where plain error review is appropriate. *See id.* at 524. The dissent questions the existence of a plain error in this case and notes with apparent concern the increased use of plain error review in our case law. Whether we have increased the use of our discretion to take plain error review, or whether just the usage of the term "plain error" has increased in our case law, is unclear. Even if true, however, it is beside the point. In *this* case, under *these* circumstances, plain error review is appropriate. The actions of the state in this case— from the police officers' decision to pursue defendant in a low-speed chase for the $25 specific-fine traffic violation of not wearing a helmet, to the prosecutor's decision to pursue a felony charge under those circumstances, to the attorney general's office's decision to defend those decisions on appeal—should not be ignored and the case remanded for further prosecution when the answer to the legal issue presented is clear—defendant should not have been convicted of fleeing or attempting to elude a police officer for using her mobility device to get home after a traffic stop.

In light of those considerations, we exercise our discretion to correct the trial court's error in failing to grant a judgment of acquittal.

Reversed.

**POWERS, J.,** dissenting.

The majority opinion reverses defendant's conviction based on a theory that was not raised or developed at trial. Although I agree that defendant's conviction should be reversed on a different legal basis given a new development in the law, I would remand the case back to the trial court to allow the parties the opportunity to litigate the new theory in the regular course. We need not determine whether the trial court should have raised on its own accord the issue of whether defendant was operating a "motor vehicle" for purposes of ORS 811.540(1)(b)(A) to grant a judgment of acquittal based on an undeveloped factual record. Accordingly, I respectfully dissent.

As a general matter, "[i]n our system of justice, the purpose of an appeal is not to give the appellant an opportunity to pursue a new theory that it did not rely on below." *John Hyland Const., Inc. v. Williamsen & Bleid, Inc.*, 287 Or App 466, 471, 402 P3d 719 (2017). An exception to that general observation—and one that appears more frequently as of late—is review for plain error.[1] To qualify for plain-error review under ORAP 5.45(1), the alleged error must be: (1) an error of law; (2) obvious and not reasonably in dispute; and (3) apparent on the record without requiring an appellate court to choose among competing inferences. *See, e.g.*, *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013);

---

[1] The term "plain error" appears approximately 57 times in decisions from 1991 through 2001, which is roughly a decade of decisions after *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1991). *Ailes* certainly was not the first case to articulate an exception to the preservation doctrine, which generally precludes appellate review of an error not raised in the tribunal below. However, the increased frequency of plain-error review being discussed in appellate decisions becomes apparent when considering that the same term appears approximately 942 times in cases decided from 2010 through 2020. Whether the rise of cases mentioning plain error—which is an increase of over 1,550 percent—is good for the ends of justice, bad for the policies served by the preservation doctrine, or some combination thereof, can be explored by others; however, it is worth highlighting the significant change.

*Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P3d 956 (1991). If appellant's argument has satisfied the three-pronged plain-error test, we must then decide whether to exercise our discretion to review the error and explain our reasons for so choosing. *Vanornum*, 354 Or at 630 (so stating); *Ailes*, 312 Or at 382 n 6 (identifying several factors for consideration when deciding whether to correct a plain error); *see also State v. Reynolds*, 250 Or App 516, 521, 280 P3d 1046, *rev den*, 352 Or 666 (2012) (discussing additional factors used to determine whether to exercise discretion to reach a plain error).

At trial, defendant did not contest that she was operating a motor vehicle for purposes of the charged crime, *viz.*, fleeing or attempting to elude a police officer under ORS 811.540(1)(b)(A). Indeed, in submitting proposed jury instructions to the trial court, defendant offered Uniform Criminal Jury Instruction (UCrJI) 2700(11) (defining motor vehicle) and UCrJI 2700(19) (defining vehicle). On appeal, however, she abandons the argument she made to the trial court and argues that she was not operating a "motor vehicle," but rather, operating a "motor assisted scooter" as defined by ORS 801.348. After working through the various (and potentially overlapping) provisions of the vehicle code, the majority opinion concludes that "it is obvious and not reasonably in dispute that defendant was not operating a motor vehicle under the vehicle code when she was operating her motor assisted scooter that she used due to a disability" and that it was appropriate to exercise discretion to correct the trial court's error "where the undisputed evidence establishes that the state cannot prove an element of the crime[.]" 312 Or App at 203. In my view, defendant's contention does not meet the requirements for plain-error review.

As noted earlier, defendant was charged with a crime that requires operation of a "motor vehicle." *See* ORS 811.540(1)(a). The vehicle code defines "motor vehicle" as "a vehicle that is self-propelled or designed for self-propulsion." ORS 801.360. The vehicle code also defines "vehicle" as "any device in, upon or by which any person or property is or may be transported or drawn upon a public highway and includes vehicles that are propelled or powered by any

means." ORS 801.590. Under those definitions, defendant appears to be using a motor vehicle. However, the vehicle code is more nuanced for the circumstances presented by this case than merely having those two definitions operate together.

ORS 801.348 defines a "motor assisted scooter" as a "vehicle" that:

"(1)   Is designed to be operated on the ground with not more than four wheels;

"(2)   Has a foot support or seat for the operator's use;

"(3)   Can be propelled by motor or human propulsion; and

"(4)   Is equipped with a power source that is incapable of propelling the vehicle at a speed of greater than 24 miles per hour on level ground and:

"(a)   If the power source is a combustion engine, has a piston or rotor displacement of 35 cubic centimeters or less regardless of the number of chambers in the power source; or

"(b)   If the power source is electric, has a power output of not more than 1,000 watts."

Although it is possible that defendant was operating a "motor assisted scooter," it is not entirely clear on this record given the lack of evidence on whether the power source of defendant's vehicle meets the statutory requirements on maximum speed and power of combustion engine or electric output.[2] Moreover, given that no Oregon appellate court has specifically addressed the operation of a motor assisted scooter and the operation of a motor vehicle in this context,

---

[2] Incidentally, when the primary officer was asked about the kind of motor that powered defendant's vehicle, he responded: "So it's an electric motor. I'm unsure of the specific wattage. I do have access if you want me to testify to that." The prosecutor did not follow up, nor did defendant cross-examine the officer on that point. Indeed, as noted elsewhere, the parties proceeded on the assumption that the standard definitions of "motor vehicle" and "vehicle" were sufficient. If we were to reverse and remand, for the reasons discussed below, the parties would have an opportunity to develop the record on whether the vehicle had a power output of not more than 1,000 watts to qualify as a "motor assisted scooter" as defined by the vehicle code. *See* ORS 801.348(4)(b).

it is unclear to me how the majority opinion can conclude on this record that the requirements of plain error are met. *See, e.g.*, *State v. Reyes-Camarena*, 330 Or 431, 436, 7 P3d 522 (2000) (concluding that the asserted error was not obvious and was reasonably in dispute and explaining that "[n]o Oregon appellate court has considered the issue, let alone held that defendant's position is correct"). To be sure, *State v. Greene*, 283 Or App 120, 388 P3d 1132 (2016), addressed whether someone who uses a motorized wheelchair in a crosswalk on a city street while intoxicated could be convicted of driving under the influence of intoxicants. Although the reasoning of that case may inform the analysis here, the issue presented by this appeal has not been decided and—given the various overlapping definitions—is reasonably in dispute. *See State v. Jordan*, 249 Or App 93, 98, 274 P3d 289, *rev den*, 353 Or 103 (2012) (noting that alleged error was undecided and therefore, under the circumstances of that case, reasonably in dispute).

In short, given how the record developed at trial and the lack of development in the law on the legal issue, I would not reach defendant's claim as one of plain error. Because I do not believe that defendant's contention meets the threshold requirements for plain-error review, it is not necessary to expand on whether—even if the trial court committed plain error—we should exercise our discretion to correct it. Suffice it to say that there are many valid countervailing jurisprudential reasons for a court to choose not to review an unpreserved error even if that error may be "obvious" including invited error, strategic choice, interest in the judicial system avoiding unnecessary reversal, as "well as its interest in requiring preservation of error." *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007). Those are not abstract interests; indeed, courts uniformly have applied preservation principles across a wide spectrum of cases, including capital cases. *See, e.g.*, *State v. Cox*, 337 Or 477, 498-99, 98 P3d 1103 (2004), *cert den*, 546 US 830 (2005) (rejecting a plain-error argument in a death penalty case on automatic and direct review); *McDonnell v. Premo*, 309 Or App 173, 196 n 12, 483 P3d 640 (2021) (rejecting plain-error arguments in a death penalty case on collateral review). I need not delve into those considerations where, as is the case here,

I would reverse and remand for a new trial for a different reason.[3]

In her third and fourth assignments of error, defendant raises a different unpreserved challenge based on the trial court giving a nonunanimous jury instruction and in accepting a nonunanimous verdict. The jury returned a 11-1 verdict. Correctly recognizing the development of the law after defendant's trial, the state concedes that the trial court plainly erred in both respects. *See Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020) (holding that a conviction for a nonpetty offense based on a nonunanimous verdict violates a defendant's right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution). For the reasons stated in *State v. Ulery*, 366 Or 500, 504, 464 P3d 1123 (2020), I would reverse and remand for a new trial where the parties could develop the factual record and legal arguments on whether the vehicle that defendant operated qualifies for the charged crime.

Accordingly, I respectfully dissent.

---

[3] In articulating why plain-error review is appropriate in this case, the majority opinion highlights the actions of the stopping officers, the prosecutor, and the Attorney General's office. *See* 312 Or App at 203 (observing that the various state actors' actions "should not be ignored"). On the one hand, how a traffic violation with a $25 presumptive fine turned into a conviction for a Class C felony is troubling. *See* ORS 814.534(4) and ORS 811.540(3)(a). In my view, however, a court's subjective belief about the wisdom of the underlying prosecution is not the issue before us. *See* Or Const, Art III, § 1 (providing that the powers of the government "shall be divided into three separate branches *** and no person charged with official duties under one of these branches, shall exercise any of the functions of another").