No. 204 March 18, 2026 811

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of C. E. W.,
a Person Alleged to have Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

C. E. W.,
*Appellant.*

Marion County Circuit Court
22CC06444; A186622

Matthew L. Tracey, Judge pro tempore.

Argued and submitted January 8, 2026.

Christopher J. O'Connor argued the cause for appellant. Also on the brief was Multnomah Defenders, Inc.

Robert A. Koch, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

O'CONNOR, J.

Reversed.

Powers, J., concurring.

**O'CONNOR, J.**

Appellant appeals from a supplemental judgment of continued commitment, recommitting him to the custody of the Oregon Health Authority (OHA) for a period not to exceed 180 days. We reverse. The trial court plainly erred in failing to ensure that appellant was advised of his rights at the recommitment hearing, the error was not harmless, and we exercise our discretion to correct the error.

Appellant was initially committed to the custody of the OHA in October 2022.[1] His commitment was continued multiple times after that initial commitment. On November 20, 2024, appellant was served with a Notice of Intent to Continue Commitment and did not sign the notice. The last day of the active recommitment was January 12, 2025. On December 2, 2024, the state filed a Certificate For Continued Commitment For Mental Illness and requested that the court "[p]roceed with a hearing as required by ORS 426.307 because the person protests continued commitment and requests a hearing." The trial court ordered a hearing for January 7, 2025, and at the hearing, the trial court read appellant's "rights as delineated by ORS 426.100." At the conclusion of the hearing, the trial court found that appellant was still mentally ill and in need of treatment and continued the commitment for 180 days.

Appellant raises a single assignment of error and asserts that the trial court plainly erred "by holding a recommitment hearing and recommitting [him] after not following ORS 426.303 by failing to inform the appellant of the procedural posture of the case and of his rights under ORS 426.301." First, appellant argues that the trial court failed to follow the proper procedure under ORS 426.303 by "issu[ing] a citation, ordering that *** appellant appear at a court hearing on January 7, 2025, which was over a month after the court received the late notification" of appellant's protest of recommitment. Second, appellant argues that the trial court failed to inform appellant of his rights set forth

---

[1] The record suggests that appellant might have been committed to OHA custody previously and that the current commitment began in October 2022. The precise date that the current commitment began is immaterial to our analysis.

in ORS 426.301,[2] as required by ORS 426.303. We begin with appellant's argument that the trial court violated ORS 426.303 when it failed to advise him of his rights at the recommitment hearing because it is dispositive. We thus do not address appellant's first argument about whether the trial court otherwise followed the proper procedure.

Appellant failed to preserve his arguments at the trial court, and "[g]enerally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). However, we have discretion to correct a "plain" error. ORAP 5.45(1). An error is plain when the legal point is obvious and not reasonably in dispute and the error is apparent on the record without our having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). If an error is plain, we must affirm if it is harmless. *State v. Ortiz*, 372 Or 658, 671, 554 P3d 796 (2024). If an error is plain and not harmless, then we decide whether to exercise our discretion to correct the error. *Id.* at 672. We consider, among other things, "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991).

The meaning of ORS 426.303 presents a question of statutory interpretation, which is a question of law. *State v. Ramoz*, 367 Or 670, 704, 483 P3d 615 (2021). We interpret the statute to identify the legislature's intent by examining the text in context and giving any relevant legislative history appropriate weight. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

The recommitment process begins with ORS 426.301. Under that statute, OHA, or the director of the treating facility if OHA delegates its authority to the director, must notify a committed person of the intent to continue the commitment. If OHA or the facility director certifies to

---

[2] The legislature has amended ORS 426.301 since the hearing on continued commitment. Or Laws 2025, ch 559, § 13. The amendment does not affect our analysis, and we refer to the current version of the statute.

the court that "the person is still a person with mental illness and is in need of further treatment," they shall notify the committed person "immediately" by issuing a copy of the certification to the person and the community mental health program director in the county. ORS 426.301(1). The statute requires OHA's certification to advise the person of the information listed in ORS 426.301(2), including, among other things, that the person has the right to counsel, the right to a physical examination by a physician or other qualified professional at the state's expense, and the right to subpoena witnesses and present evidence. The committed person may protest continued commitment or may not protest. ORS 426.301(5).

If the person protests continued commitment, then ORS 426.303 governs the next stage of the process:

> "When the person protests a further period of commitment the Oregon Health Authority or facility designated in accordance with ORS 426.301 shall immediately notify the court and the court shall have the person brought before it and shall again advise the person that the authority or facility has requested that commitment be continued for an additional period of time and that if the person does not protest this commitment the commitment will be continued for an indefinite period of time up to 180 days. *The person shall also be informed of the rights set forth in ORS 426.301.*"

(Emphasis added.) The italicized sentence is at issue here. The parties agree that appellant was not informed of the rights set forth in ORS 426.301 during the hearing. Instead, the trial court read appellant a version of the rights listed in ORS 426.100, which apply at an initial commitment proceeding, not a recommitment hearing. As a result, the rights that the trial court read to appellant did not include the right in ORS 426.301(2)(f) to an examination by a court-appointed physician or other qualified professional other than a member of the staff where appellant is confined.

Appellant argues that the first sentence of ORS 426.303 directs the court to advise a committed person of the nature of the proceeding and that the second sentence continues to address the court's duty at the hearing. The

state responds that the legislature's use of the passive voice in the second sentence indicates that the legislature wanted only to ensure that the person had been informed of the rights set forth in ORS 426.301 by someone, at some point. The state argues that, in this case, because OHA or its designee informed appellant of his rights as set forth in ORS 426.301 when it served him with the notice,[3] there is no violation of ORS 426.303.

We conclude that the second sentence of ORS 426.303 obviously requires a person to be informed of their rights as set forth in ORS 426.301 during the recommitment hearing. That is, even assuming that the statute's use of the passive voice in the sentence at issue makes it not obvious *who* must inform the person of their rights at the recommitment hearing, it is obvious that *someone* must do so at the recommitment hearing.

ORS 426.303 provides for the step in the recommitment process where the committed person is brought to court for a recommitment hearing. It requires that the committed person again be informed of the information that should have been communicated to the committed person when they were notified of OHA's intent to continue the commitment under ORS 426.301. The first sentence of ORS 426.303 expressly requires the court to advise a committed person of the process—repeating information already provided to the committed person in the certification by OHA. The second sentence of ORS 426.303 states, "The person shall also be informed of the rights set forth in ORS 426.301." Even though who shall inform the committed person of their rights could be unclear when the second sentence of ORS 426.303 is read in isolation because of the statute's use of the passive voice, the statute's use of "also" makes plain that the second sentence continues on the same subject as the prior sentence. ORS 426.303 requires that the committed person be *again* advised of their rights as set forth in ORS 426.301,

---

[3] ORS 426.301 requires OHA or its designee to serve the certification on the person and provides that "the certification must advise the person of all the following" information, which includes a person's rights under ORS 426.301(2). The record shows that OHA served a document on appellant called a notice. The notice contains the substance of a certification under ORS 426.301. In this opinion, we refer to that document as the notice or the certification.

in the same way that it requires the court to repeat the information about the recommitment process. Thus, the text of ORS 426.303 makes it apparent that the statute requires that the rights under ORS 426.301 are communicated to the committed person at the recommitment hearing.

The context includes ORS 426.301, which already requires that the certification include the advice of rights listed in ORS 426.301(2). If the state were correct that the second sentence of ORS 426.303 required only that the rights listed in ORS 426.301 be provided in the certification that was provided to the committed person, then ORS 426.303 would be superfluous. *See SAIF v. Ward*, 369 Or 384, 398, 506 P3d 386 (2022) ("[W]hen construing a statute to determine the intent of the legislature, this court will generally attempt to avoid a statutory construction that creates redundancy in the way that the statute is read.").

Although we do not appear to have previously expressly rejected the interpretation advanced by the state in this case, we have held that a trial court plainly errs by violating ORS 426.303 when it fails to ensure that someone had advised a committed person of their rights at a recommitment hearing. *See State v. I. H.*, 295 Or App 783, 784, 433 P3d 508 (2019) (accepting the state's concession that the trial court plainly erred by violating ORS 426.303 and that the error required reversal when the trial court failed to advise a committee at a recommitment hearing of all of his rights under ORS 426.301); *see also State v. B. L. K.*, 293 Or App 240, 241, 422 P3d 433 (2018) (accepting the state's concession that the trial court committed plain error at a recommitment hearing when it failed to advise the appellant of all of his rights as required by ORS 426.301(3) and ORS 426.303); *State v. Montgomery*, 147 Or App 69, 70, 934 P2d 640 (1997) ("We agree with the state and appellant that in a proceeding for the continuation of a commitment, the alleged mentally ill person must be advised of the rights identified in ORS 426.301 and that, as with a failure to advise a person of his or her rights pursuant to ORS 426.100 in an initial commitment proceeding, the failure to give the advice is reversible error."). *I. H.*, *B. L. K.*, and *Montgomery* are per curiam opinions where we accepted the state's concessions

of error without a lengthy explanation of the facts or our reasoning, and they appear to involve slightly different applications of ORS 426.303 than is the application before us in this case. But our conclusion that ORS 426.303 plainly requires someone to advise a committed person of the rights set forth in ORS 426.301 during the recommitment hearing is consistent with our previous conclusions that the trial courts violated ORS 426.303 by failing to ensure that the appellants were advised of the rights under ORS 426.301 at a recommitment hearing.

There could be tension between interpreting a statute for the first time in an opinion and concluding in that same opinion that a trial court plainly erred when it failed to follow the statute. The meaning of some statutes, however, is obvious from their text and context. Such statutes do not require an appellate court decision to make their meaning clear. Other statutes require complex or extended statutory interpretation to discern the legislature's intent, and the meaning of those statutes is not obvious. For example, we have concluded that a trial court plainly erred by failing to merge verdicts on two counts that were charged under the same statute, which we had not previously interpreted, when the meaning of that statute "[was] obvious and not reasonably in dispute." *State v. Mankiller*, 344 Or App 327, 340-41, 580 P3d 313 (2025); *see also, e.g.*, *State v. Gayman*, 312 Or App 193, 198-202, 492 P3d 130 (2021) (concluding that a trial court plainly erred when it denied a defendant's motion for judgment of acquittal because the defendant's motor assisted scooter did not constitute a "motor vehicle" under the relevant criminal statute even though we had not previously interpreted the statute to determine whether the legislature intended a motor assisted scooter to qualify as a motor vehicle). By contrast, we have concluded that the meaning of a statute is not plain when identifying the legislature's intent requires complex or extended statutory interpretation analysis. *See, e.g.*, *State v. Johnson*, 329 Or App 57, 63, 540 P3d 73 (2023) (concluding that the defendant's proposed interpretation of the statute was not plain because "[t]o conclusively resolve this legal issue of first impression, we would have to engage in an in-depth analysis of statutory text, context, and legislative history to a degree that

exceeds the bounds of plain-error review"). Those cases illustrate the common-sense concept that the legislature clearly expressed its intent in the text and context of some statutes but the legislature's intent in other statutes is reasonably in dispute until interpreted in a judicial opinion.

Here, the legislature's intent in the second sentence of ORS 426.303 that we recognize today is obvious and not reasonably in dispute even though we have not previously published a decision saying so explicitly, like the statute at that was at issue in *Mankiller*. The parties agree that no one advised appellant of his rights set forth in ORS 426.301 during the recommitment hearing. The state's argument relies on the notice that was read to appellant six weeks prior to the recommitment hearing. The state does not argue that anyone advised appellant of his rights as set for in ORS 426.301 at any other time. Thus, the trial court plainly erred by failing to ensure that appellant was advised of his rights under ORS 426.301 during the recommitment hearing, as required by ORS 426.303.

We also conclude that the error is not harmless. As we have explained in prior cases, a trial court's failure to advise a committee of their rights at a recommitment hearing requires reversal, which necessarily includes a conclusion that the error is not harmless. *I. H.*, 295 Or App at 784. The state argues that any error is harmless because appellant was advised of his rights when he was served with the certification, weeks prior to the hearing, and because appellant does not assert that he would have done anything differently if he had been correctly advised of his rights at the hearing. We disagree.

As we noted above, the record contains a notice of rights that generally follows the rights set out in ORS 426.301. The notice is signed by the person who served appellant with the notice in a space that asserts that the server read the notice to appellant and that appellant "protests a further period of commitment verbally or by refusing to sign." Appellant did not sign the notice in the space provided for his signature. The absence of appellant's signature is significant in our harmless error analysis.

In *State v. A. R.*, 192 Or App 296, 300-01, 84 P3d 1129 (2004), we held that the trial court erred when it failed to advise the appellant of their rights pursuant to ORS 426.100(1). We concluded that the error was harmless because the record contained a written notice that "exceeded" the advice required by ORS 426.100(1). *Id*. at 300. "The person who served the notice on [the] appellant signed and dated the notice, attesting that the notice was not only delivered to appellant but was also read to her. [The] [a]ppellant also signed and dated the notice." *Id*. at 300-01.

We distinguished *A. R.* in *State v. N. S.*, 201 Or App 71, 116 P3d 949 (2005). In *N. S.*, the appellant sought reversal of an initial commitment, arguing "that the trial court erred in not advising him of his rights under ORS 426.100(1)." *Id*. at 73. The appellant was served with a citation "signed and dated by the deputy who served it." *Id*. at 74 (footnote omitted). The citation was not signed and dated by the appellant. We concluded that "without an acknowledgment from [the] appellant that he actually read the citation, we cannot conclude that he was adequately advised of his rights as we did in [*A. R.*]." *Id*. We also noted that the appellant's conduct at the hearing itself "further supports" the conclusion that the error was not harmless. *Id*.

Since *A. R.* and *N. S.*, we have continued to place significance on whether a person signed the notice of rights prior to a hearing when deciding whether the failure to advise a person of their rights at a civil commitment or recommitment hearing was harmless. *See State v. S. J. F.*, 247 Or App 321, 327, 269 P3d 83 (2011) (noting the significance of that distinction between *A. R.* and *N. S.*). In *State v. T. W.*, the appellant raised as plain error the trial court's failure to advise him that "the court would appoint a physician to examine him at court expense, as the court was required to do under ORS 426.303 and ORS 426.301(3)(h)." 300 Or App 646, 647, 452 P3d 1081 (2019). The state conceded that the trial court plainly erred. *Id*. The state argued that the error was harmless and that we should not exercise our discretion to correct it because the appellant signed the written notice, which included the omitted advice, and the person serving the notice also sign it. *Id*. We concluded that

the error was harmless, relying on *A. R. See also State v. J. R.*, 307 Or App 752, 753-54, 477 P3d 421 (2020) (concluding that a "virtually identical issue" to *T. W.* was harmless and that we would not exercise our discretion to correct the error).

Here, as we have noted, appellant did not sign the written notice that was served on him six weeks prior to the recommitment hearing. Accordingly, the fact that the written notice was served on him and read to him does not render harmless the error in failing to advise him of the rights at the recommitment hearing, consistent with our analysis in *N. S.*

In a hearing for continued commitment, like this one, the state seeks to deprive a person of their liberty because of the impacts of their mental illness. In this case, the evidence showed that appellant has schizoaffective disorder and, as the state points out on appeal, "remain[ed] actively symptomatic despite receiving medication on a complex treatment regimen that requires regular blood draws[.]" We cannot conclude that OHA providing the appellant with notice of his rights weeks prior to the recommitment hearing renders harmless the failure of the trial court to ensure the person is advised of their rights at the time of the hearing, in violation of ORS 426.303, when the record lacks an acknowledgment by the allegedly mentally ill person that they understood the rights provided to them prior to the hearing. *N. S.*, 201 Or App at 74; *see also S. J. F.*, 247 Or App at 327 (relying on *N. S.* to conclude that a trial court's failure to advise a person of their rights at a commitment hearing was not harmless when the record reflected that the person's attorney had discussed whether to proceed with the hearing in her absence or continue the hearing but the record did not contain an acknowledgment from the appellant that they had been advised of their rights). On this record we cannot say that the trial court's error was harmless.

We exercise our discretion to correct the error and reverse. The error is grave, the relative interests of the parties weigh in favor of reversal, and the ends of justice also weigh in favor of reversal. We have explained when exercising our discretion to reverse in similar cases that plain

error review of violations of the notice requirements for initial commitments "is justified by the nature of civil commitment proceedings, the relative interests of the parties in those proceedings, the gravity of the violation, and the ends of justice." *State v. M. M.*, 288 Or App 111, 116, 405 P3d 192 (2017) (internal quotation marks omitted). Those same considerations apply at this recommitment hearing, and we exercise our discretion to correct the plain violation of ORS 426.303 here.

Reversed.

**POWERS, J.,** concurring.

I fully concur with the majority opinion's conclusion that the failure to advise appellant of his rights at the recommitment hearing as required by ORS 426.303 was plain error and that we should exercise our discretion to correct it. I write separately because it is not clear to me that *State v. Mankiller*, 344 Or App 327, 580 P3d 313 (2025), correctly applied the "obvious and beyond reasonable dispute" portion of the plain-error analysis. *See State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (setting out the three requirements for plain-error review).

In *Mankiller*, the defendant asserted that the trial court plainly erred by failing to merge two guilty verdicts for unlawful taking of an elk, ORS 498.002(1), and the state remonstrated that it was not obvious that there was only one victim. 344 Or App at 340. Instead of concluding that the legal error was not obvious for purposes of plain-error review, we concluded it was "starkly apparent" how to interpret the statute. *Compare State v. Farmer*, 317 Or 220, 224, 856 P2d 623 (1993) (explaining that an "open issue" is not an "obvious" error if it is "reasonably open to dispute"), *with Mankiller*, 344 Or App at 340-41 (interpreting the statutory framework governing wildlife crimes to conclude that it was "starkly apparent" that the legislature "would view the state as the victim" of the unlawful taking of an elk crime). To me, that approach seems to run afoul of how an appellate court determines whether an issue is "obvious" for purposes of plain-error review. *See, e.g., State v. Reyes-Camarena*, 330 Or 431, 436, 7 P3d 522 (2000) (holding that the alleged

error was not plain, in part, because "[n]o Oregon appellate court ha[d] considered the issue, let alone held that [the] defendant's position [was] correct"); *State v. Gallegos*, 302 Or App 145, 152, 460 P3d 529, *rev dismissed*, 366 Or 382 (2020) (explaining that the competing arguments offered by the parties demonstrated that the alleged error was reasonably in dispute, which "has the effect of precluding plain-error review"); *State v. Smith*, 277 Or App 709, 719, 372 P3d 549, *rev den*, 360 Or 423 (2016) ("Without commenting on the relative merit of those crosscutting contextual contentions, it suffices to observe that [the] defendant's is not so conclusive as to render his construction beyond reasonable dispute."). Here, however, we need not rely on *Mankiller* or resolve the tension it creates because the legal error—*viz.*, the failure to follow the requirements of ORS 426.303 and provide appellant notification of his rights—is obvious and not in dispute.[4]

As the majority opinion explains, ORS 426.303 requires individuals subject to recommitment hearings to be advised of their rights. 347 Or App at 815; *see also* ORS 426.303 ("The person shall also be informed of the rights set forth in ORS 426.301."). Setting aside the parties' reasonable dispute about the mechanics of what the legislature intended (*e.g.*, who was responsible and how that responsibility would be carried out in practical terms?), the parties agree that appellant was not provided those rights at the recommitment hearing. That legal error is obvious and otherwise meets the requirements for plain-error review.

I respectfully concur.

---

[4] Similarly, the majority opinion's citation to *State v. Gayman*, 312 Or App 193, 492 P3d 130 (2021), is unnecessary in my view. Not only is it doubtful that the requirements for plain error were met in that case, *see* 312 Or App at 204-08 (Powers, J., dissenting), but also we need not rely on cases that push the boundaries of what it means to qualify for plain-error review when it is undisputed in this case that there is an obvious legal error by failing to provide appellant notification of his rights as required by ORS 426.303.